**In re Robert D. ANDERSON and Catherine A. Anderson,**
**Debtors.**

**Bankruptcy No. 93–13780.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

July 14, 1995.

Mark A. Humbert, Cincinnati, OH, for debtors.

Larry J. McClatchey, Columbus, OH, for Schriber.

Mark Greenberger, Chapter 7 Trustee, Cincinnati, OH.

## DECISION and ORDER ON APPLICATION TO REOPEN

BURTON PERLMAN, Bankruptcy Judge.

Pursuant to 11 U.S.C. § 350(a) this Chapter 7 bankruptcy case was closed February 17, 1994. Debtors have now, pursuant to § 350(b), moved to reopen the case.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(B) and (O).

On about September 14, 1994, Schriber Sheet Metal Company (hereafter "Schriber") filed a complaint in the Common Pleas Court of Montgomery County, Ohio, naming debtors as defendants. Also named as defendants were John R. Davis and Marlene Davis, Energy Management and Conservation Corp. (hereafter "EMCC"), Tri–State Disposal and Recycling, Inc., dba Tri–State Tire Disposal, c/o Robert Anderson, and David R. Wiechel. In the balance of this paragraph we summarize the allegations of the complaint. It is alleged that the Davises were officers and directors of EMCC, while the Andersons were officers and directors of Tri–State. Defendant Wiechel was president of EMCC. Both Tri–State and EMCC utilized the trade name "Tri–State Tire Disposal." Prior to April, 1992, the Anderson defendants operated Tri–State. The business of Tri–State was collecting, processing, sorting, and disposing of discarded auto and truck tires. The Andersons owned and operated a site near Cleves, Ohio, where Tri–State deposited scrap tires which it had collected. Prior to October, 1992, action was brought against Tri–State and the Andersons in Hamilton County Court of Common Pleas requiring them to clean up an accumulation of scrap tires. An order was issued thereon requiring that the site be brought into regulation by November 30, 1992. On September 26, 1992, the Andersons sold the Tri–State business to EMCC.

Prior to October 1, 1992, Wiechel approached Schriber for the purpose of leasing a warehouse building located at 235–237 South Kilmer Street in Dayton, Ohio ("the Building"). Schriber did then, effective October 1, 1992, lease the premises to EMCC. EMCC thereafter continued its business of acquiring scrap tires. On or about December 4, 1992, the Davises permitted Anderson to remove substantial quantities of scrap tires and bring them to the Building. Between December 4, 1992 and March 9, 1994, a large quantity of tires were packed into the Building. On or about March 23, 1994, the Building was declared to be a nuisance by the City of Dayton, and Schriber was ordered to remedy the situation. Based on the foregoing allegations, Schriber seeks relief

against the named defendants, including debtors. It is noteworthy that in its second claim for relief in the state court action, Schriber complains about the creation and the maintenance of a nuisance by defendants.

In support of its motion to reopen, debtors invoke *In re Rosinski,* 759 F.2d 539 (6th Cir.1985). Since this was a no asset case and we perceive no irremedial prejudice to the creditor, nor has it been suggested that there was any fraud or intentional design in the failure to list the creditor, ordinarily *Rosinski* would dictate that the case be reopened without further discussion, except that we would allow an opportunity to contest dischargeability. Schriber, however, vigorously contests reopening. It says that it was not scheduled as a creditor nor did it have actual knowledge of the commencement of the case in time to file a proof of claim, or in time to file a request for determination of dischargeability, and therefore its claim, pursuant to 11 U.S.C. § 523(a)(2) could not in any case be barred. This argument is flawed, however, because of the nature of the claim asserted by Schriber against these debtors. That claim is for committing a nuisance, and debtors can equally say that they were unaware of the claim in time to schedule it. At the hearing, a further consideration was discussed, and that was whether Schriber's claim arose only post-petition. If this were so, it would not be subject to discharge.

After careful consideration, we have reached the following conclusion. The fact that what Schriber asserts is a claim on account of a continuing tort which, as stated in its state court complaint, is alleged to have begun prior to the filing of debtors' bankruptcy case. That the claim is of this nature makes the case unusual and the authorities suggested by the parties inadequate. For this court to reach a conclusion as to the propriety, in accordance with bankruptcy law, of the dischargeability of all or any part of the claim asserted by Schriber against these debtors, would require us to undertake a consideration of a part of the litigation pending in the state court. This seems to us not the best use of judicial resources.

Accordingly, we take the following action. Debtors' motion to reopen is granted. At the same time, we lift the stay which prohibits Schriber from continuing its state court litigation against these defendants. Our lifting of the stay is conditioned as follows: (1) there may be no execution on any judgment against debtors, but any such judgment will be subject to review and further proceedings in this court; and (2) we request that the Common Pleas Court which tries the case, whether by the court or by a jury, specially find, in the event that liability on the part of debtors is determined to exist, (a) what portion of the claim is attributable to the period prior to the date of bankruptcy, September 8, 1993, and (b) whether action by the debtors or either of them which provides the basis for liability, was willful.

So Ordered.